UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 6:16-CR-13-REW-HAI-2 |
| v. | ) | |
| | ) | RECOMMENDED DISPOSITION |
| CHRISTOPHER JONES, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On referral from District Judge Wier (D.E. 95), the Court considers reported violations of supervised release conditions by Defendant Christopher Jones.

District Judge Van Tatenhove entered Judgment against Defendant in June 2017 on Defendant's plea to one count of conspiracy to distribute 50 grams or more of a substance containing methamphetamine. D.E. 44 (plea agreement); D.E. 62 (Judgment). Defendant was sentenced to 72 months of imprisonment followed by four years of supervised release. D.E. 62 at 2-3. The case was later reassigned to Judge Wier. D.E. 72. Defendant was released on January 8, 2021. On February 2, 2021, Defendant began outpatient substance abuse counseling at Windows of Discovery in London.

**I.**

On August 31, 2021, the United States Probation Office ("USPO") issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. The Report charges four violations. According to the Report,

> On May 27, 2021, after previous attempts to make contact with Jones, this Officer received a text message from Jones advising he could not pass a drug test. He further advised he smoked a vape pen containing THC. This Officer replied to

the text message instructing Jones to report to the probation office for a drug test. After Jones advised he would need to arrange transportation, this Officer gave him the option to report on this date or the following day, May 28, 2021, before 9:00 a.m. Jones replied, "Okay. I'll see you tomorrow." Jones failed to report as instructed.

Based on the admission to smoking THC, Violation #1 charges a violation of the condition that Defendant must refrain from any unlawful use of a controlled substance. This is a Grade C violation.

Also based on this use of THC Violation #2 charges a violation of the condition prohibiting commission of another federal, state, or local crime and the condition that Defendant not unlawfully possess a controlled substance. Citing the Sixth Circuit's decision that use is equivalent to possession, Violation #2 is a Grade B violation because Defendant's THC use and possession, on account of his prior drug conviction, constitutes a Class E felony under 21 U.S.C. § 844(a).

Violation #3 charges a Grade C violation of the condition that Defendant "must report to the probation officer as instructed" and the condition that Defendant "must follow the instructions of the probation officer related to the conditions of supervision." This violation is based on Defendant's failure to report on May 27 or May 28, as instructed.

Violation #4 charges a Grade C violation of the condition that requires Defendant to submit to drug tests. The condition states, "You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court." The Report alleges that, by failing to appear at the probation office on May 27 or 28 as instructed, Defendant thereby simultaneously failed to submit to drug testing.

2

On December 10, 2021, the USPO issued an Addendum to the Report. According to the Addendum, "On October 16, 2021, Jones was arrested by the London Police Department and charged in Laurel County District Court, London, Kentucky, case number 21-F-0844, with Charge 1) Convicted Felon in Possession of a Handgun (K.R.S. 527.040, a Class C felony)."

Violation #5 in the Addendum charges another violation of the condition that Defendant "must not commit another federal, state, or local crime." Because the charged crime of being a felon in possession of a handgun is a state felony, Violation #5 is a Grade B violation.

Violation #6 charges a violation of the condition that prohibits Defendant from possessing a firearm. Based on Defendant being arrested for, and charged with, illegally possessing a handgun, this allegation constitutes a Grade C violation.

On January 14, 2022, the Court conducted an initial appearance on the Report and Addendum pursuant to Rule 32.1. D.E. 93. The Court set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. At the initial appearance, the United States made an oral motion for interim detention; Defendant did not argue for release. *Id*. Based on the heavy defense burden under 18 U.S.C. § 3143(a), the undersigned remanded Defendant to the custody of the United States Marshal. *Id*.

At the final hearing on October 5, 2021, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 96. The government moved to dismiss Violations #5 and #6, the handgun-related violations in the Addendum. Defendant competently entered a knowing, voluntary, and intelligent stipulation to Violations #1, #2, #3, and #4. *Id*. For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for each of these four violations as described in the Report. He admitted he had used marijuana and did not report to the probation

3

office as directed.  The United States thus established violations #1-4 under the standard of section 3583(e).

## II.

The Court has evaluated the entire record, the Report, Addendum, and accompanying documents, and the sentencing materials from the underlying Judgment in this District. Additionally, the Court has considered all the section 3553 factors imported into the section 3583(e) analysis.

Under section 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction.  Defendant pleaded guilty to conspiracy to distribute 50 grams or more of methamphetamine mixture, a Class B felony. *See* 21 U.S.C. §§ 841, 846.  Such a conviction carries a 36-month maximum period of incarceration upon revocation pursuant to 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven.  *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007).  Under section 7B1.1, Defendant's admitted conduct would qualify as a Grade C violation with respect to Violations #1, #3, and #4 and a Grade B violation for Violation #2.  Given Defendant's criminal history category of IV (the category at the time of the conviction in this District) and Grade B violation,[1] Defendant's range, under the Revocation Table of Chapter Seven, is 12 to 18 months.  USSG § 7B1.4(a).

---

[1] *See* USSG § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). Defendant's drug trafficking conviction carries no maximum term of supervised release. *See* 18 U.S.C. § 3583(h); 21 U.S.C. 841(b)(1)(C).

## III.

At the final hearing, the parties announced an agreed recommended disposition—revocation with 16 months of incarceration and 36 months of supervised release, with no new conditions. The Court accepts the parties' proposed within-Guidelines penalty.

The government explained that its motion to dismiss the Addendum violations was a benefit the government offered in exchange for Defendant's stipulation to the Violations in the Report. The state handgun charge remains pending, and Defendant will be able to face that charge without having previously admitted to the conduct in this Court. The dismissal of Violations #5 and #6 does not affect Defendant's Guidelines Range.

In support of the recommended penalty, the government explained that the violations were severe, but Defendant has the capacity to do better. Looking at the underlying conviction, the government noted that Defendant had made multiple trips to Georgia to obtain high-quality methamphetamine for distribution. Defendant was at the beginning of a "wave" of cases involving potent meth from the Peachtree State. Defendant was apprehended after a traffic stop in August 2015 where officers found over 115 grams of methamphetamine. PSR ¶ 10. The meth seized from Defendant was ultimately determined to be high-purity crystal meth. However, the government explained, the chemical testing was not completed until between Defendant's guilty plea and sentencing. Defendant received a downward variance at sentencing to comport with the

5

terms of the plea (which were drafted under the belief Defendant was transporting a meth mixture, not crystal meth).

The government explained that Defendant has a history of struggling while on release. In 2011, he was given two opportunities to participate in drug court. He failed to appear at drug court and ultimately "absconded" from it. Here, Defendant violated his conditions within a few months of release and likewise "absconded" from the probation office by refusing to report as directed. The government argued that Defendant's failure to cooperate with the probation officer exacerbated his breach of the Court's trust. Defendant had shown a "cavalier approach to supervised release." Supervision cannot be effective if the supervisee does not obey the officer.

The government argued that Defendant's history and characteristics pose a danger that drug use can lead back to trafficking. While committing the underlying offense, Defendant was a daily user of meth and marijuana. PSR ¶ 64.

The government argued that the circumstances of Defendant's arrest on the handgun charge was relevant to these proceedings. State officers executed a search warrant at a residence. Defendant was not the target of the warrant, but he was one of six people arrested at the scene. He was found in a room with another person. And a handgun (containing a non-live round) was there, too. The government did not know what charges the other arrestees faced.

The government acknowledged that Defendant had admitted smoking THC. However, the fact that Defendant still refused to report for a drug test made the government suspicious that Defendant would have tested positive for something else. The government expressed hope that Defendant is fully capable of doing better in the future.

The defense argued that 16 months will be an adequate a wake-up call. The defense expressed frustration that Defendant had not taken supervision sufficiently seriously. Deterrence

of future violations and crimes is a dominant consideration in this case, according to the Defense. Defendant needs to avoid situations and people who can get him into trouble.

Defendant initially declined to address the Court. But he later said he would like to prove to himself that he can control his own life, and not let it be controlled by drugs.

## IV.

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range. Congress mandates revocation in a case of this nature. By statute, the Court must revoke Defendant because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession). Subsection 3583(g)(1) calls for revocation when the defendant is found to have possessed a controlled substance in violation of the mandatory condition that the defendant not unlawfully possess a controlled substance. Subsection 3583(d) provides an alternative to revocation and imprisonment when a drug treatment program is appropriate. *See Crace*, 207 F.3d at 835. Neither side argued for treatment as an alternative to revocation.

The presence of a Grade B violation also means that revocation is recommended under the Guidelines. U.S.S.G. § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release."). Even if revocation were not mandatory, revocation would be appropriate in this case due to the nature of the violations.

One factor concerns the nature and circumstances of Defendant's conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). Based on the description in his PSR, Defendant was bringing large quantities of meth into this District from

out of state.  He was also an addict and daily user of meth and marijuana.  Defendant must avoid the allure of the criminal lifestyle and stay away from drugs.

The Court next considers Defendant's history and characteristics.  The Court recognizes his meth addiction and hopes he will commit himself fully to treatment in the future.  Defendant, who is about to turn 30 years old, also needs to take control of his life and start taking the law and his conditions of supervision seriously.  If he does not change his pattern of being a poor supervisee, he will likely spend most of his adult life in prison.

Another consideration is the need for additional training and treatment.  Defendant was undergoing outpatient treatment.  He should be reevaluated upon his release.  The existing conditions are sufficient for him to get additional help with his addiction issues if warranted.

Two other factors, the need to protect the public and the need to deter criminal conduct, do weigh heavily in this case.  Defendant's use of an illegal drug necessarily involves contact with drug trafficking.  And Defendant trafficked drugs before to support his habit.  Defendant is warned that the meth available now is especially potent (and often laced with fentanyl).  And the meth trade has become more violent.  The parties' hope is that this incarceration term will help incentivize change.  Defendant is warned that future violations will most likely result in harsher sentences.

The most important factor in this case is the severe breach of the Court's trust.  The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender.  The particular conduct is an important but secondary issue.  *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator.").  The Court must impose a sentence that is

8

sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). Here, Defendant's use of drugs is inherently dangerous, given his history. And his refusal to comply with the directions of his probation officer is a severe breach of trust. Cooperation with Probation is in Defendant's best interests.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed, as here, by imposing a within-Guidelines sentence.

Based on the foregoing, the Court **RECOMMENDS**:

1.    That, upon the government's motion, Violation #5 and Violation #6 be dismissed.

2.    That, upon his stipulation, Defendant be found guilty of Violations #1-4.

3.    Revocation with a term of imprisonment of 16 months, followed by 36 months of supervised release under the same conditions previously imposed.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As discussed at the final hearing, within **SEVEN days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Wier's docket upon submission. If Defendant chooses to waive allocution, he **SHALL** do so on or before the deadline for filing objections.

This the 26th day of January, 2022.

Signed By:

*Hanly A. Ingram*

United States Magistrate Judge