UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA,    ) | |
| ) | |
| Plaintiff,    ) | |
| ) | No. 6:16-CR-13-REW-HAI-2 |
| v.    ) | |
| ) | RECOMMENDED DISPOSITION |
| CHRISTOPHER JONES,    ) | |
| ) | |
| Defendant.    ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On referral from District Judge Wier (D.E. 123), the Court considers reported violations of supervised release conditions by Defendant Christopher Jones. This is his second revocation.

**I.**

District Judge Van Tatenhove entered Judgment against Defendant in June 2017 on Defendant's plea to one count of conspiracy to distribute 50 grams or more of a substance containing methamphetamine. D.E. 44 (plea agreement); D.E. 62 (Judgment). Defendant was sentenced to 72 months of imprisonment followed by four years of supervised release. D.E. 62 at 2-3. The case was later reassigned to Judge Wier. D.E. 72. Defendant was first released on January 8, 2021. On February 2, 2021, Defendant began outpatient substance abuse counseling at Windows of Discovery in London.

On August 31, 2021, the United States Probation Office ("USPO") Reported as follows:

> On May 27, 2021, after previous attempts to make contact with Jones, this Officer received a text message from Jones advising he could not pass a drug test. He further advised he smoked a vape pen containing THC. This Officer replied to the text message instructing Jones to report to the probation office for a drug test. After Jones advised he would need to arrange transportation, this Officer gave him the option to report on this date or the following day, May 28, 2021, before

9:00 a.m. Jones replied, "Okay. I'll see you tomorrow." Jones failed to report as instructed.

Defendant was charged with (1) unlawful use of a controlled substance, (2) committing the crime of illegal drug possession, (3) failing to report to the Probation Office as instructed, and (4) failing to submit to drug testing.

An addendum followed on December 10, 2021, which reported an arrest for being a felon in possession of a firearm by the London Police Department on October 16. This felony arrest constituted a fifth charged violation. The addendum also includes a sixth violation for possessing a firearm.

Defendant ultimately stipulated to Violations #1-4, and the government moved to dismiss Violations #5 and #6. *See* D.E. 97 (Recommended Disposition). He received a revocation sentence of sixteen months, with 36 months of supervised release to follow. D.E. 100 (Feb. 4, 2022 revocation judgment). Defendant was released again on December 2, 2022.

## II.

On December 15, 2022, the USPO issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. According to the Report, Defendant failed to report to the Probation Office (as required) within 72 hours of his release on December 2. The probation officer contacted Defendant's father, who said he had not seen Defendant since December 3. The Report thus charges in Violation #1 a Grade C violation of the report-upon release condition.

Defendant was arrested over a year later, on December 26, 2023, and appeared on December 28, 2023, for an initial appearance on the Report pursuant to Rule 32.1. D.E. 126. The Court set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. At the initial appearance, the United States made an oral motion for

interim detention; Defendant did not argue for release. *Id.* Based on the heavy defense burden under 18 U.S.C. § 3143(a), the undersigned remanded Defendant to the custody of the United States Marshal. *Id.* Defendant's final hearing was continued and, in the interim, the government withdrew its request for detention and Defendant was released on the existing conditions on January 25, 2024. D.E. 136.

On February 2, 2024, the USPO issed an Addendum to the Report. It states:

> On February 1, 2024, the defendant reported to the U.S. Probation Office, in London, Kentucky, as directed. Prior to producing a urine specimen for drug testing purposes, he voluntarily admitted to using methamphetamine on January 31, 2024. He subsequently produced a urine specimen which tested positive for methamphetamine, via instant testing device. The defendant signed a Positive Drug Test Admission Report (PROB 4), in which he admitted to the aforementioned use of methamphetamine.

The Addendum charges in Violation #2 a Grade C violation of the condition that prohibits unlawful use of a controlled substance.

Drawing on the same conduct, Violation #3 charges a violation of the condition prohibiting commission of another federal, state, or local crime and the condition that prohibits unlawful possession of a controlled substance. Citing the Sixth Circuit's decision that use is equivalent to possession, Violation #3 is a Grade B violation because Defendant's use and possession of marijuana and methamphetamine, on account of his prior drug conviction, constitute a Class E felony under 21 U.S.C. § 844(a).

At the final hearing on February 26, 2024, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 141. Defendant competently entered a knowing, voluntary, and intelligent stipulation to all three violations. *Id.* For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for each of the violations as described in the

Report and Addendum. The United States thus established violations #1-3 under the standard of section 3583(e).

### III.

The Court has evaluated the entire record, the Report, Addendum, and accompanying documents, and the sentencing materials from the underlying Judgment in this District. Additionally, the Court has considered all the section 3553 factors imported into the section 3583(e) analysis.

Under section 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty to conspiracy to distribute 50 grams or more of methamphetamine mixture, a Class B felony. *See* 21 U.S.C. §§ 841, 846. Such a conviction carries a 36-month maximum period of incarceration upon revocation pursuant to 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under section 7B1.1, Defendant's admitted conduct would qualify as a Grade C violation with respect to Violations #1, and #2 and a Grade B violation for Violation #3. Given Defendant's criminal history category of IV (the category at the time of the conviction in this District) and Grade B violation,[1] Defendant's range, under the Revocation Table of Chapter Seven, is 12 to 18 months. USSG § 7B1.4(a).

---

[1] *See* USSG § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

4

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). Defendant's drug trafficking conviction carries no maximum term of supervised release. *See* 18 U.S.C. § 3583(h); 21 U.S.C. 841(b)(1)(C).

## IV.

Following the sealed portion of the final hearing, the government recommended revocation with twelve months of incarceration, followed by three years of supervised release. The defense requested twelve months and a day of imprisonment, followed by sixteen months of supervised release, to include inpatient treatment.

According to the government, there were "lots of complicated things happening" in this case, which warranted a within-Guidelines penalty, but one at the bottom of the range. There are clear aggravating factors here. This is Defendant's second revocation in this case, and he received sixteen months of imprisonment last time. Upon his release from his revocation sentence, he absconded for months. Defendant's history also includes noncompliance on release in his state cases. Further exacerbating the breach of the Court's trust is the fact that Defendant was granted release while Violation #1 was pending. Yet he used methamphetamine while released during the pendency of these revocation proceedings.

However, the government argued, Defendant had made some positive steps. After his methamphetamine use, he willingly went to the courthouse, walked down the long hallway to the probation office, and admitted his drug use. He ultimately turned himself in after the court issued a warrant for his arrest.

The government also pointed out that Defendant's post-revocation supervision term never really got started, as he failed to report upon release in December 2022. The government asked

5

for a mechanism to help Defendant's transition out of prison next time, such as inpatient addiction treatment immediately upon release.

The defense admitted that Defendant's behavior showed a general disregard for the law and resistance to efforts by courts to get him to conform. According to the defense, the BOP should have arranged for a halfway house, but failed to do so. Had Defendant been afforded that opportunity to find a job and make some money before being sent out on his own, things might have been different. And Defendant has a drug problem.

According to the defense, Defendant is "starting to get it." He is now in a relationship that he values. After the warrant issued and the Marshals missed him when they went to arrest him at home, Defendant went to the courthouse to turn himself in.

The defense's requested twelve-month-and-a-day penalty would allow for good-time credit and effectively be below the Guidelines Range of twelve to eighteen months. The defense also requested inpatient treatment upon release, as part of the recommended sixteen months of additional supervision.

Defendant declined to address the Court.

## V.

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range. Congress mandates revocation in a case of this nature. By statute, the Court must revoke Defendant because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession). Subsection 3583(g)(1) calls for revocation when the defendant is found to have possessed a controlled substance in violation of the mandatory condition that the defendant not unlawfully

possess a controlled substance. Subsection 3583(d) provides an alternative to revocation and imprisonment when a drug treatment program is appropriate. *See Crace*, 207 F.3d at 835. Neither side argued for treatment as an alternative to revocation.

The presence of a Grade B violation also means that revocation is recommended under the Guidelines. U.S.S.G. § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release."). Even if revocation were not mandatory, revocation would be appropriate in this case due to the nature of the violations.

One factor concerns the nature and circumstances of Defendant's conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). Based on the description in his PSR, Defendant was bringing large quantities of meth into this District from out of state. He was also an addict and daily user of meth and marijuana. According to the PSR, Defendant had made multiple trips to Georgia to obtain high-quality methamphetamine for distribution. He was apprehended after a traffic stop in August 2015 where officers found over 115 grams of methamphetamine. PSR ¶ 10. The meth seized from Defendant was ultimately determined to be high-purity crystal meth. However, the chemical testing was not completed until between Defendant's guilty plea and sentencing. Defendant received a downward variance at sentencing to comport with the terms of the plea (which were drafted under the belief Defendant was transporting a meth mixture, not crystal meth). Defendant's return to meth use raises the possibility of a return to trafficking.

The Court next considers Defendant's history and characteristics. This is his second revocation in this case, and he struggled with supervision in state court as well. In 2011, he was given two opportunities to participate in drug court, but failed to appear both times. Both

revocations in this case include failures to report, although Defendant ultimately reported, knowing he had used drugs, and ultimately turned himself in on the revocation warrant. Next time, Defendant must cooperate with supervision. The Court recognizes Defendant's meth addiction and hopes he will commit himself fully to treatment in the future. As Defendant was warned last time, if he does not change his pattern of being a poor supervisee, he will likely spend most of his adult life in prison.

Another consideration is the need for additional training and treatment. The parties and the Court agree that inpatient treatment upon release is warranted. Defendant should go directly to inpatient treatment upon release, of a duration to be determined by the USPO. He must comply with all program rules and requirements.

Two other factors, the need to protect the public and the need to deter criminal conduct, do weigh heavily in this case. Defendant's use of an illegal drug necessarily involves contact with drug trafficking. And Defendant trafficked drugs before to support his habit. Defendant must also be deterred from absconding from supervision. The Court will recommend an additional two years of supervision. If he can comply for that long of a period, then Defendant may have a hope of success.

The most important factor in this case is the severe breach of the Court's trust. The Guidelines suggest that the *primary* wrong in the supervised release context is the violation of the Court's trust by an offender. The particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other

statutory goals imported into section 3583(e). Here, this is Defendant's second revocation. Defendant's use of drugs is inherently dangerous, given his history. And his failure to report led to almost a year where he avoided supervision.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed, as here, by imposing a within-Guidelines sentence. There is nothing in the record the Court can seize upon to support a below-Guidelines sentence. Taking into account the factors discussed above and the matters discussed in the sealed portion of the hearing, the undersigned finds that a revocation sentence of twelve months is sufficient, but not greater than necessary, to address the pertinent penalty factors.

## VI.

Based on the foregoing, the Court **RECOMMENDS**:

1. That, upon his stipulation, Defendant be found guilty of Violations #1-3.

2. Revocation with a term of imprisonment of 12 months, followed by 24 months of supervised release under the same conditions previously imposed, to begin with mandatory inpatient treatment whose duration is at the discretion of the Probation Office, including a requirement that he follow all program rules and requirements.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As discussed at the final hearing, within **fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the

District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Wier's docket upon submission. If Defendant chooses to waive allocution, he **SHALL** do so on or before the deadline for filing objections.

This the 27th day of February, 2024.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge